**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-11882
_____

RALPH G. EVANS,

*Petitioner-Appellant,*

*versus*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

_____

Petitions for Review of a Decision of the
U.S. Tax Court
Agency No. 23647-15
_____

_____

No. 24-11884
_____

NATHANIEL A. CARTER,
STELLA C. CARTER,

*Petitioners-Appellants,*

2                    Opinion of the Court                    24-11882

*versus*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

_____

Petitions for Review of a Decision of the
U.S. Tax Court
Agency No. 23621-15

_____

Before BRANCH, LUCK, Circuit Judges, and SCHLESINGER,* District Judge.

PER CURIAM:

This is the second time this tax case has come before us. The first appeal concerned whether a conservation easement was established. This appeal asks what the easement is worth.

## I.    FACTS

Nathaniel Carter is a real estate investor. In 2005, he discovered Dover Hall, an unimproved property located in Glynn County, Georgia. That same year, Dover Hall Plantation, LLC (created and owned by Carter) purchased the property, which spans 5,245 acres. After donating 100 acres of interior land to a community foundation in May 2006, Dover Hall retained 5,145 acres.

---

* Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

In 2008, Carter pursued rezoning Dover Hall for planned development.  Glynn County approved the zoning change, allowing up to 1.16 million square feet of commercial development on the property.

In 2009, Ralph Evans purchased a 50% interest in Dover Hall from Carter for $29,428,027.  Dover Hall's only asset was the property.

To preserve the land's natural beauty and to obtain a tax benefit, Carter explored placing a conservation easement on a portion of Dover Hall.  In December 2011, Dover Hall granted to the North American Land Trust a 500-acre easement in the 5,145-acre property.

To determine the value of the conservation easement, Dover Hall obtained an independent appraisal of the property.  The appraiser determined that the tract's pre-easement value, as of December 29, 2011, was $48,217,047 and that its highest and best use was "as a recreational oriented estate with sharply diminished rights to partition the land."  Based on that highest and best use, the appraiser concluded that the property was worth $34,467,047 post-easement and that the easement was worth $14,175,000.

With this appraisal in hand, Dover Hall claimed a charitable deduction of $14,175,000 for its donation of the charitable easement.  Carter and Evans, as equal partners in Dover Hall, each claimed a 50% share of the deduction on their 2011 individual income tax returns.  Carter also reported carryover deductions for

the donation on his 2012 and 2013 individual returns, which he filed jointly with his wife.

## II.    PROCEDURAL HISTORY

The IRS disputed that the conservation easement satisfied the "granted-in-perpetuity" requirement of 26 U.S.C. § 170(h)(2)(C).  The Tax Court ruled against Carter and Evans, and they appealed.  We reversed and remanded the case after finding that the donation met the requirement.  *Carter v. Comm'r*, No. 20-12200, 2022 WL 4232170, at *1–*2 (11th Cir. Sept. 14, 2022).

On remand, the IRS disputed the value of the conservation easement reported on the returns.  The IRS issued notices of deficiency to Carter and Evans, disallowing their charitable deductions and imposing penalties.  Carter and Evans challenged the IRS's determinations.

Whether Carter and Evans made a qualified conservation contribution, and the value of that contribution were the central issues in the three-day trial.  The Tax Court concluded that Carter and Evans made a qualified conservation contribution but that the conservation easement was worth $1,000,000, well below the amounts they claimed.  Carter and Evans timely appealed.

Three issues exist.  First, whether the Tax Court erred by ignoring independent evidence establishing the property's fair market value, including the actual sale price of a half-interest in the property before the donation.  Second, whether the Tax Court erred by failing to determine the property's highest and best use.  Third, whether the Tax Court erred by relying solely on distressed

sales in an appraiser's report and excluding all other evidence. We will consider the arguments in turn.

## III.    STANDARDS OF REVIEW

Whether the Tax Court applied the "correct standard to determine fair market value is a legal issue. We review *de novo* the Tax Court's rulings on the interpretation and application of the tax code." *Est. of Jelke v. Comm'r*, 507 F.3d 1317, 1321 (11th Cir. 2007) (citation modified). But, "[a] determination of fair market value is a mixed question of fact and law: the factual premises are subject to a clearly erroneous standard, while the legal conclusions are subject to de novo review." *Id.*

Where the trial court's evidentiary rulings are challenged, we review those rulings for abuse of discretion. *United States v. Graham*, 123 F.4th 1197, 1248 (11th Cir. 2024). Abuse of discretion review also applies to rulings on the admission and exclusion of expert testimony, *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005), while "relevancy and materiality" are matters of law, *see, e.g.*, *Braden v. United States*, 365 U.S. 431, 436 (1961).

## IV.    DISCUSSION

### A.    *Fair Market Value*

Carter and Evans maintain the Tax Court erred by ignoring evidence establishing the fair market value of Dover Hall, including the purchase of a half interest in the property for $29,000,000, multiple offers from national developers to buy the property for nearly $100,000,000, and uncontested testimony regarding the property's

highest and best use and the region's projected growth. They maintain that the Tax Court was not required to agree with all the evidence, but it was not entitled to ignore it altogether. Yet the record supports the Tax Court's finding that the easement was worth $1,000,000.

Tax deductions are a matter of legislative grace, and the Supreme Court teaches "the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (quoting *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943)). "Federal tax deductions are generally not allowed for anything less than a full donation of real property, but an exception is made for a 'qualified conservation contribution.'" *TOT Prop. Holdings, LLC v. Comm'r*, 1 F.4th 1354, 1361 (11th Cir. 2021) (quoting I.R.C. § 170(f)(3)(B)(iii)). The parties agree that the donated land was a qualified conservation easement. They merely dispute the easement's value.

We have explained, "the value of a conservation easement . . . 'is the fair market value of the perpetual conservation restriction at the time of the contribution.'" *Pine Mountain Pres., LLLP v. Comm'r*, 978 F.3d 1200, 1210 (11th Cir. 2020) (quoting 26 C.F.R. § 1.170A-14(h)(3)(i)). The easement's fair market value "is generally calculated based on sales prices of comparable easements, but '[i]f no substantial record of marketplace sales is available to use as a meaningful or valid comparison,' the 'before-and-after' valuation method is used." *TOT Prop. Holdings, LLC*, 1 F.4th at 1369 (quoting 26 C.F.R. § 1.170A-14(h)(3)(i)).

The parties agree that the "before-and-after valuation" was appropriate. Under that method, an easement's value "is the difference between the fair market value of the entire contiguous parcel of property before and after the granting of the restriction." 26 C.F.R. § 1.170A-14(h)(3)(i). To make that calculation, the court must consider the property's highest and best use both before and after the contribution. *Id.* The before value requires "an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed." 26 C.F.R. § 1.170A-14(h)(3)(ii).

During the three-day trial, the parties presented expert testimony on the easement's value—Martin Van Sant and Thomas Wingard for the taxpayers and Zac Ryan for the IRS. While Van Sant and Wingard valued the easement at $10,300,000, Ryan valued it at only $1,000,000. There are two reasons for this disparity. First, Van Sant and Wingard valued Dover Hall at $46,300,000 before the easement, while Ryan valued it at $15,435,000.

Second, the experts used vastly different methods to calculate Dover Hall's post-easement value. Wingard and Van Sant opined that the easement reduced Dover Hall's value by 30%. Van Sant based this figure on the percentage reduction in waterfrontage and permissible residential units, while Wingard relied on the percentage reduction in docks. When asked at trial why they added the percentages, Wingard replied, "[W]e thought that was a reasonable summation." Based on that 30% reduction, Wingard and

Van Sant determined that the Dover Hall was worth $36,000,000 post-easement, making the easement worth $10,300,000.

By contrast, Ryan estimated the easement's value directly based on five comparable properties, four of which had timber. Adjusted for timber, he classified comparables as superior or inferior to Dover Hall based on water features and other factors. Inferior properties ranged from $491 to $671 per acre, while superior properties ranged from $1,517 to $1,587. Ryan concluded that the land's value should be $1,000 per acre, making the easement worth $1,000,000.

The Tax Court rejected Wingard and Van Sant's valuations and credited Ryan's. It reasoned that "Van Sant and Wingard's inability to explain their determination that the easement reduced by 30% the value of the Dover Hall property renders their report unreliable." By contrast, the Tax Court "found Mr. Ryan's analysis sound and his defense of that analysis convincing. In particular, he addressed to our satisfaction the questions petitioners raised about the comparability of the properties he used as points of reference in his 'before' analysis."

The Tax Court did not err in reaching these conclusions about the three experts. It explained why it credited Ryan's opinion over those of Wingard and Van Sant. And Petitioners have not shown that the Tax Court's reasoning was internally contradictory. Therefore, the Tax Court's credibility determinations were not clearly erroneous, and the taxpayers have not proven the amount of their deduction. *See Anderson v. City of Bessemer City*, 470 U.S.

24-11882          Opinion of the Court                    9

564, 575 (1985) (teaching, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error"); *Brown*, 415 F.3d at 1270 ("Questions about the weight given to testimony, as distinguished from the issue of its admissibility, are for the factfinder."); *Palmer Ranch Holdings Ltd v. Comm'r*, 812 F.3d 982, 1002 (11th Cir. 2016) (explaining that "the taxpayer retains the burden of proving the amount of his deduction '[a]t all times.'") (quoting *Gatlin v. Comm'r*, 754 F.2d 921, 923–24 (11th Cir. 1985)).

### B.    *Highest and Best Use*

We next address whether the Tax Court erred by failing to determine the property's highest and best use. In short, the answer is no.

As explained above, a property's highest and best use is one factor in the before-and-after method. Here, the parties' experts agreed on Dover Hall's highest-and-best use, and the Tax Court adopted that use by crediting Ryan's testimony and report.[1] This agreement obviated the Tax Court's need to engage in a formalistic

---

[1] In their post-trial filings before the Tax Court, Petitioners represented, "Both Petitioners' appraisers and Respondent's appraiser used the before and after methodologies to determine the fair market value of the conservation easement donation. Both Petitioners' and Respondent's appraisers agreed that the highest and best use was to hold for development." The parties disagreed about "when they thought that development would occur."

highest-and-best use analysis. To the extent that Petitioners argue that the Tax Court should have adopted a different highest and best use, they cannot raise that argument for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (explaining that a party is not permitted to raise an issue for the first time on appeal or to "argue a different case from the case she presented to the district court") (quoting *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998)).

### C.    *Distressed Sales*

Carter and Evans contend that the Tax Court erred by relying on distressed sales in Ryan's report. Yet, as detailed above, the Tax Court did not err in accepting Ryan's determination of the easement's value.

### V.    CONCLUSION

For the above reasons, we affirm the Tax Court's resolution of the taxpayers' claims.

**AFFIRMED.**

24-11882                BRANCH, J., Dissenting                1

BRANCH, Circuit Judge, Dissenting:

Ralph Evans and Nathaniel and Stella Carter claimed a tax deduction for the donation of a conservation easement encumbering 500 acres of a larger tract of land. In this consolidated appeal, they argue that the tax court failed to assess the highest and best use of the land, a required step in determining the land's value, and that failure renders the court's valuation fundamentally flawed. I agree, and so I dissent from the Majority's conclusion that the tax court did not err when it failed to address the land's highest and best use in its analysis.[1]

A taxpayer claiming a deduction for a conservation easement contribution must prove the value of the easement, which is "the fair market value of the perpetual conservation restriction at the time of the contribution." *Savannah Shoals, LLC v. Comm'r*, --- F.4th ----, 2026 WL 2056291, at *3 (11th Cir. July 16, 2026) (quoting 26 C.F.R. § 1.170A-14(h)(3)(i)). Often taxpayers and the Commissioner will determine the easement's fair market value by using the "before-and-after" method, which calculates "the difference between the fair market value of the property pre- and post-encumbrance." *TOT Prop. Holdings, LLC v. Comm'r*, 1 F.4th 1354, 1369

---

[1] "Whether the Tax Court used the correct standard to determine fair market value is a legal issue." *Palmer Ranch Holdings Ltd. v. Comm'r*, 812 F.3d 982, 993–94 (11th Cir. 2016) (alteration adopted) (quotation omitted). As such, we review the question *de novo*. *Id.* at 994. We review the tax court's findings of fact for clear error. *Id.* at 993.

(11th Cir. 2021) (quotations omitted); *see* 26 C.F.R. § 1.170A-14(h)(3)(i).

"To determine the before value—that is, the fair market value of the property before contribution of the conservation restriction—the regulations require a determination of the property's highest and best use before donation." *TOT Prop.*, 1 F.4th at 1369 (quotations omitted). As the regulations instruct, the "before" value

> must take into account not only the current use of the property but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

26 C.F.R. § 1.170A-14(h)(3)(ii). "Parties first determine the property's highest and best use, then calculate a dollar value based on that use." *Savannah Shoals*, 2026 WL 2056291, at *3 (quotations omitted); *see also Palmer Ranch Holdings Ltd. v. Comm'r*, 812 F.3d 982, 987 (11th Cir. 2016) ("[A parcel's] before value must take into account the parcel's highest and best reasonable and probable use that supports the highest present value." (quotations omitted)). I agree with the Majority that when determining an easement's value using the before-and-after method, "the court must consider the property's highest and best use both before and after the contribution." *See PBBM-Rose Hill, Ltd. v. Comm'r*, 900 F.3d 193, 209 (5th Cir. 2018) ("A critical aspect in calculating fair market value is

24-11882                    BRANCH, J., Dissenting                    3

determining the highest and best use of the property before and after." (quotations omitted)).  But I part ways from the Majority when it concludes that the tax court did so here.

The Commissioner and the Majority do not dispute that the tax court did not explicitly address the highest and best use of the petitioners' land; in fact, the phrase "highest and best use" does not appear in the tax court's opinion a single time.  Instead, the Majority determines that the tax court was excepted from the requirement to consider the land's highest and best use for two reasons: first, because the parties agreed on the land's highest and best use and, second, because the tax court implicitly adopted the Commissioner's expert's assessment of highest and best use when it accepted the expert's valuation of the land.  But the record shows the parties disagreed about the land's highest and best use, and the tax court may not avoid its obligation to consider a required part of the analysis by adopting one party's ultimate valuation.

First, the parties did not agree on the land's highest and best use.  According to the Commissioner's expert, Zac Ryan, "The highest and best use of the subject property as if vacant is estimated to be for continued silviculture and recreation while the property is being held for *long-term speculative investment relating to possible mixed use development*" (emphasis added).  The petitioners' experts, for their part, concluded that the property's highest and best use was "as recreational, managed timber and habitat areas with potentially an interim hold for future, subsequent [mixed-use] developmental use in concert with the [petitioners' development plan]."

4                          BRANCH, J., Dissenting                    24-11882

While these statements might sound similar, the parties clearly disagreed about how soon such mixed-use development might occur. The Commissioner's post-trial briefing before the tax court objected to the petitioners' proposed finding of fact that "the highest and best use of the property was mixed use development to include potentially residential and commercial development." It contended that "the likelihood of near-term development was remote." The petitioners' post-trial brief, for its part, observed that while the parties' experts "agreed that the highest and best use was to hold for development," "[t]hey differed on when they thought that development would occur." They argued that "development would occur when the market improved," which "could have been as early as 2012"—within a year of easement's contribution.[2] This timing distinction is not irrelevant; the regulations direct that the analysis of a property's highest and best use "must take into account . . . an objective assessment of *how immediate or remote* the likelihood is that the property, absent the restriction, would in fact be developed." 26 C.F.R. § 1.170A-14(h)(3)(ii) (emphasis added). So, to the extent the tax court skipped the highest-and-best-use analysis because it believed the parties agreed on that issue, it erred.

---

[2] The briefing below also demonstrates that, contrary to the Majority's suggestion that the petitioners are arguing a new view of the land's highest and best use on appeal, the petitioners have consistently argued that development on the property would have been feasible much sooner than the Commissioner's expert predicted.

24-11882                BRANCH, J., Dissenting                5

Second, the tax court could not fulfill its obligation to analyze the land's highest and best use simply by adopting Commissioner expert Ryan's final valuation. The Commissioner argues that Ryan's "valuation was predicated on his subsidiary determination regarding the property's highest and best use," so in adopting the expert's valuation, the court necessarily adopted his highest-and-best-use determination. But neither the Commissioner nor the Majority offers any caselaw supporting the idea that the tax court may, *sub silentio*, incorporate into its opinion all of a particular expert's factual findings and conclusions simply by adopting his valuation.

To the contrary, we have been clear that a lower court must express its "findings and conclusions . . . with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied." *Curtis v. Comm'r*, 623 F.2d 1047, 1051 (5th Cir. 1980)[3] (quotation omitted); *see also Smith v. Georgia*, 684 F.2d 729, 734–35 (11th Cir. 1982) (noting that while the trial court need not "set out findings on all the myriad factual questions that arise in a case," its "findings must be sufficiently comprehensive and pertinent to the issues to provide a basis for decision" (quotation omitted)). And we have "insist[ed] that the Tax Court apply a discernible methodology that is appropriately tied to the standard set out

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (holding that all decisions from the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981, are "binding as precedent in the Eleventh Circuit").

in the governing regulations." *Pine Mountain Pres., LLLP v. Comm'r*, 978 F.3d 1200, 1210 (11th Cir. 2020); *see Whitehouse Hotel Ltd. v. Comm'r*, 615 F.3d 321, 335–36 (5th Cir. 2010) (remanding for revaluation when the tax court failed to "explicitly rule on th[e] issue" of highest and best use because "finding a property's highest and best use is a critical aspect for determining its fair market value" and without such a finding the tax court had not provided "a clear understanding of the ground or basis of its decision" (alteration adopted) (quotations omitted)).

The tax court did not "apply a discernible methodology" here. *Pine Mountain*, 978 F.3d at 1210. Indeed, the court did not explicitly adopt Ryan's report as its own findings of fact; it merely determined that the petitioners' experts had not offered a credible valuation, and so it "accept[ed] Mr. Ryan's determination that the easement . . . was worth $1,000,000" at the time it was donated. Nor did the court take issue with the petitioners' experts' determination of the land's highest and best use before the easement; the court rejected their proposed valuation based on its disagreement with their approach to valuing the land *after* the easement's donation. Thus even if the tax court could fulfill its obligation to assess the land's highest and best use by adopting one expert's factual findings and conclusion,[4] there is nothing in the court's opinion

---

[4] For example, in *PBBM-Rose Hill*, the Fifth Circuit noted that the tax court "weighed the conflicting evidence" regarding whether a proposed highest and best use was legally permissible and made multiple findings determining that it was uncertain and unlikely. 900 F.3d at 211. The tax court then agreed with

24-11882                BRANCH, J., Dissenting                7

from which to infer that it did so here.  The tax court therefore failed to offer any findings or conclusions from which a reviewing court could "determine rather than speculate that the law has been correctly applied."[5]  *Curtis*, 623 F.2d at 1051 (quotation omitted).

For these reasons, I would vacate the tax court's decision and remand for the court to determine the land's highest and best use.  I thus respectfully dissent.

---

the Commissioner's expert about the before value.  *Id.*  The Fifth Circuit affirmed, saying the tax court "implicitly accepted" the Commissioner's expert's proposed highest and best use.  *Id.*  Here, by contrast, we have no discussion of the land's highest and best use (or any of the factors related to determining the highest and best use) from which to infer that the tax court found the petitioners' proposed use unlikely and adopted the Commissioner's proposed use—aside from its wholesale rejection of petitioners' experts' report and acceptance of Ryan's conclusion as to the easement's value.

[5] The parties also dispute the merits of their respective positions regarding the land's highest and best use.  We cannot assess whether the tax court clearly erred in its factual findings regarding the land's highest and best use when the court made no such findings.